UNITED STATES DISTRICT COURT

Northern District of California

BOARD OF TRUSTEES OF THE U.A. LOCAL NO. 159 HEALTH AND WELFARE TRUST FUND, *et al.*,

    Plaintiffs,

v.

RT/DT, INC.,

    Defendant.

No. C 12-05111 JSW (MEJ)

**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** (Dkt. No. 16)

## I. INTRODUCTION

Plaintiffs[1] are various trust funds that bring this action for damages for breach of a collective bargaining agreement entered into with RT/DT, Inc., a California corporation, doing business as Thomas Plumbing ("Defendant"). Compl. ¶ 1, Dkt. No. 1. Pending before the Court is Plaintiffs' Motion for Default Judgment. Dkt. No. 16. In their Motion, Plaintiffs request that the Court enter an order granting default judgment for unpaid principal, including unpaid fringe benefit contributions, interest, liquidated damages, and attorneys' fees and costs. Mot. at 3. On March 5, 2013, the Honorable Jeffrey S. White, the presiding judge in this matter, referred Plaintiffs' Motion to the undersigned to prepare a report and recommendation. Dkt. No. 21. To date, Defendant has failed to respond to Plaintiffs' Motion and has not otherwise appeared in this matter. After careful review of Plaintiffs' Motion and controlling legal authorities, the undersigned RECOMMENDS that the District Court GRANT Plaintiffs' Motion for Default Judgment against Defendant, as set forth below.

---

[1] Plaintiffs are Board of Trustees of the U.A. Local No. 159 Health and Welfare Trust Fund; Board of Trustees of the U.A. Local No. 159 Pension Trust Fund; Board of Trustees of the U.A. Local No. 159 Journeyman and Apprentice Training Trust Fund; and Board of Trustees of the TRICO Pipes Labor Management Cooperation Committee Trust Fund. Compl. ¶ 4.

## II. BACKGROUND

Plaintiffs are multi-employer employee benefit plans within the meaning of §§ 3(3) and 3(2)(A)(iii) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3) and 1002(21)(A)(iii), and a joint labor-management trust fund organized pursuant to the provisions of § 302(c)(9) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(9), and § 6(b) of the Labor Management Cooperation Act, 29 U.S.C. § 175a. Compl. ¶ 4. The Trustees of the Board of Trustees are the administrators and named fiduciaries of the Trust Funds. *Id.*

Defendant Thomas Plumbing is an employer within the meaning of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and more particularly under § 152(2), and within the meaning of § 3(5) of ERISA, 29 U.S.C. § 1002(5). *Id.* ¶ 5. Defendant has been engaged in commerce or in an industry affecting commerce within the meaning of the NLRA, 29 U.S.C. §§ 152(6) and (7), and within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12). *Id.* Defendant has been engaged in the construction industry of California. *Id.* Defendant was and is signatory to the U.A. Local No. 159 Master Labor Agreement ("collective bargaining agreement"), by which it agreed to accept and be bound by all the terms, provisions and conditions of the collective bargaining agreement and various trust agreements establishing each of the Plaintiff trust funds (collectively, the "Agreements"). *Id.* ¶ 8. By the Agreements, Defendant promised that it would pay fringe benefit contributions in a timely manner to the Trust Funds on behalf of all of those employees performing covered work. *Id.* In the event any monthly contributions were not timely paid when due, Defendant promised to pay 10% of the amount of the contributions due as liquidated damages and not as a penalty, which sum would increase to 20% if Defendant did not pay the delinquent contributions owing before a lawsuit was filed. *Id.* ¶ 11. The liquidated damages are added to the principal sum due and unpaid as of the 20th of the month following the work month and the entire sum accrues interest at the rate of 12% per annum from that date until paid. *Id.*

In addition, under the terms of the Agreements, Defendant promised to pay reasonable attorneys' fees and all other reasonable expenses of collection in the event that Plaintiffs consulted an attorney or filed litigation in order to collect unpaid contributions. *Id.* ¶ 14.

On October 2, 2012, Plaintiffs filed the present Complaint against defendants Thomas Plumbing, Robert Thomas and Dante Thomas[2] to recover delinquent contributions from Defendant under ERISA §§ 502 and 515, 29 U.S.C. §§ 1132 and 1145. Compl. ¶ 1. In their Complaint, Plaintiffs allege that Defendant has failed to pay the amounts required by these agreements for work performed by covered employees. *Id.* ¶ 12. Specifically, at the time the lawsuit was filed, Defendant owed Plaintiffs $224,056.05 in fringe benefit contributions, liquidated damages and interest. *Id.* ¶ 12, Ex. 1. This amount was based on hours known to Plaintiffs at the time they filed the Complaint based upon reports submitted by Defendant. *Id.* ¶ 12.

Since the lawsuit was filed, Plaintiffs have been able to collect $47,636.21. Declaration of Ana Perez Hallmon at ¶ 6, Dkt. No. 16-1. As a result, Plaintiffs assert that Defendant owes Plaintiffs $176,419.84 ($224,056.05 minus $47,636.21) in principal, $8,816.16 in pre-judgment interest, $3,884.00 in attorneys' fees, and $500.00 in costs. Hallmon Decl. ¶¶ 6-8, 12. Interest continues to accrue at the contract rate of 12% per annum from February 28, 2013 until paid. Compl. ¶ 11; Hallmon Decl. ¶ 7.

On January 13, 2013, Plaintiffs effected personal service of the Summons and Complaint on Defendant. *See* Proof of Service, Dkt. No. 6; Hallmon Decl. in Support of Entry of Default ¶ 2, Dkt. No. 13. Thereafter, Defendant failed to timely file a responsive pleading or otherwise appear to defend this action. Hallmon Decl. ¶ 3. On February 12, 2013, Plaintiffs moved for entry of default against Defendant (Dkt. No. 12), which the Clerk of Court entered on February 15, 2013. Dkt. No. 14.

On February 28, 2013, Plaintiffs filed the instant Motion for Default Judgment against Defendant, seeking $176,419.84 in principal, $8,816.16 in pre-judgment interest, $3,884.00 in

---

[2] Defendants Robert Thomas and Dante Thomas are officers of Thomas Plumbing and personally guaranteed a portion of the debt Defendant owes to Plaintiffs. Compl. ¶ 7. On October 16, 2012, Robert Thomas and Dante Thomas filed for Chapter 7 bankruptcy in the United States District Court, Northern District of California, Case No. 12-48428. Dkt. No. 3. As a result, an automatic stay of this action against Robert Thomas and Dante Thomas is now in effect under 11 U.S.C. § 362. *Id.* Accordingly, Plaintiffs did not effect service of the Complaint on Robert Thomas and Dante Thomas.

attorneys' fees, and $500.00 in costs, for a total of $189,620.00. Mot. at 3. After referral by Judge White, the undersigned set the Motion for hearing on April 25, 2013. Dkt. No. 23. After Defendant failed to file a response to the Motion, the undersigned vacated the hearing pursuant to Civil Local Rule 7-1(b). The undersigned now issues the following recommendations.

### III.   DISCUSSION

**A.   Jurisdiction and Service of Process**

    1.   <u>Subject Matter Jurisdiction</u>

Plaintiffs assert claims to enforce the terms of their plans and to enforce provisions of ERISA. This is an action for damages for breach of the collective bargaining agreement for recovery of unpaid trust fund contributions. Accordingly, Plaintiffs lawsuit is authorized as a federal cause of action pursuant to ERISA, 29 U.S.C. § 1132(e)(1) and 1145. Pursuant to 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties. Jurisdiction also exists pursuant to § 301 of the LMRA, 29 U.S.C. § 185(c).

    2.   <u>Personal Jurisdiction</u>

The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and § 301(a) of the LMRA, 29 U.S.C. § 185(a). An action brought under § 502 of ERISA, "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(f). Under § 301(a) of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Since Plaintiffs' principal place of business is in Dublin, California and the Defendant's principal place of business and residence is in Antioch, California, the Court has personal jurisdiction.

    3.   <u>Service of Process</u>

Pursuant to Federal Rule of Civil Procedure 4(h)(1)(B), a domestic corporation may be served

by delivering a copy of the summons and the complaint to an officer or authorized agent of the company. Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiffs served Defendant on January 13, 2013, when copies of the Summons and Complaint were delivered to Dante Thomas, an officer of Defendant. Dkt. No 6. Accordingly, Plaintiffs properly effected service of process.

**B.     Legal Standard - Default Judgment**

After entry of a default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the above factors, the Court takes all factual allegations in the complaint as true, except for those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**C.     *Eitel* Analysis**

1.     Prejudice to the Plaintiff

Under the first *Eitel* factor, the court must examine whether Plaintiffs will be prejudiced if the Court denies their request for entry of default judgment. *Eitel*, 782 F.2d at 1471-72. Here, if the Court were to deny their request, Plaintiffs would have no other avenue for recovery, and further delay in securing a judgment would only increase the changes that Plaintiffs will be unable to recover the amounts owed. *See, e.g.*, *Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. C&L Coatings, Inc.*, 2012 WL 7748318, at *4 (N.D. Cal. Dec. 18, 2012). Absent a default judgment, there is a likelihood of prejudice to Plaintiffs. Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy. Accordingly, the first *Eitel* factor weighs in favor of granting default judgment.

2.     <u>Merits of Plaintiffs' Substantive Claim and the Sufficiency of the Complaint</u>

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. The undersigned must examine whether Plaintiffs have asserted claims upon which they may recover. *Bd. of Trs. of Laborers*, 2012 WL 7748318, at *4.

Plaintiffs' claim is for unpaid contributions in violation of ERISA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to the a multiemployer plan under the terms of the plan or under the terms of a collectively bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 of ERISA creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and allows plan fiduciaries to enforce obligations created under the collective bargaining agreement. *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.,* 572 F.3d 771, 776 (9th Cir. 2009). In order to successfully assert this claim, Plaintiffs must prove the following: (1) the Trusts are multiemployer plans under 29 U.S.C. § 1002(37); (2) the collective bargaining agreement obligated Defendant to make the employee benefit contributions; and (3) Defendant failed to make the contribution payments pursuant to the collective bargaining agreement. *Bd. of Trs. of Laborers*, 2012 WL 7748318, at *4. In this case, Plaintiffs' Complaint and supporting materials allege facts sufficient to prove the necessary elements.

As a threshold mater, Defendant must be deemed an employer before it is bound to comply with § 515 of ERISA, 29 U.S.C. § 1145. An "employer" is defined as "any person acting directly as an employer, or indirectly in the interest on an employer, in relation to an employee benefit plan, and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). As stated above, Defendant is an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of the NLRA, 29 U.S.C. § 152(6) and (7). Compl. ¶ 5.

The requirements of § 1145 make clear that an employer must be bound under a collective bargaining agreement to make employee contributions to a multiemployer plan. *Bd. of Trs. of Laborers*, 2012 WL 7748318, at *5. Under ERISA, these plans are defined as employee benefit pension plans that are made pursuant to a collective bargaining agreement and to which more than one employer contributes. 29 U.S.C. §§ 1002(3), (37). According to Plaintiffs, the Trust Funds were established as employee benefit plans under ERISA and the LMRA. Compl. ¶ 4. Defendant's obligation to contribute to the benefit plans arose out of the parties' Agreements. Compl. ¶ 8. Under the Agreements, Defendant was obligated to make contributions to the Plaintiff Trust Funds based upon work performed by covered employees. *Id*. Plaintiffs allege that Defendant failed to make timely contribution payments. *Id*. at ¶ 12. Thus, pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to an award of the unpaid principal balance of the contributions. Based on the foregoing, the undersigned finds that Plaintiffs have sufficiently stated a claim for violation of § 1145 against Defendant.

Based on the foregoing analysis, the second and third *Eitel* factors weigh in Plaintiffs' favor.

3.  <u>Sum of Money at Stake in the Action</u>

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

In their Motion, Plaintiffs seek the following: (1) that Defendant pay the sum of $176,419.84 in principal owed to the Trust Funds; (2) Defendant pay the sum of $8,816.16 in pre-judgment interest owed to the Trust Funds; and (3) Defendant pay Plaintiffs' attorneys' fees in the amount of $3,884.00 and costs of $500.00. Mot. at 3. As discussed above, this amount is authorized under the Agreement and is thus proportionate and appropriately tailored to Defendant's specific misconduct in failing to make timely contribution payments. *See Bd. of Trs. of the Sheet Metal Workers v. Accu-*

7

*Balance Associates, Inc.*, 2006 WL 3591141, at *1 (N.D. Cal. Dec. 11, 2006). Additionally, the recommended judgment, as set forth below, is both reasonable and required both by the collective bargaining agreement and 29 U.S.C. § 1132. Thus, this factor weighs in favor of default judgment.

### 4. Possibility of a Dispute Concerning a Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Here, Defendant was given ample opportunity to respond to the Complaint and participate in the proceedings. Plaintiffs served Defendant on January 13, 2013, when copies of the Summons and Complaint were delivered to Dante Thomas, an officer of Defendant. Dkt. No. 6. Thus, Plaintiffs properly effected service of process. Further, given that Defendant's obligations under the collective bargaining agreement are clear, the possibility for any factual disputes is unlikely. Notably, Plaintiffs' claims for unpaid contributions are based on Defendant's reporting of hours worked. Thus, this factor weighs in favor of default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs' Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72. Plaintiffs properly served Defendant with the Summons and Complaint. Dkt. No. 6. Defendant made no appearance in this matter and has not responded to Plaintiffs' Motion. Consequently, there is nothing suggesting that Defendant's failure to appear and litigate this matter is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). As such, this factor weighs in favor of granting default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id*. However, courts

8

have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Similarly, other courts have stated that default judgment is appropriate when a defendant refuses to litigate a case. *See, e.g., Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D.Cal. Jan. 8, 2010). Here, given that Defendant has not participated in the proceedings, a decision on the merits would not otherwise be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. Therefore, this factor weighs in Plaintiffs' favor.

### 7. Summary of *Eitel* Factors

Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned recommends that the Court grant Plaintiffs' Motion and enter fault judgment against Defendant.

## D. Relief Sought

Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), a plan fiduciary who prevails in a Section 515 claim, is entitled to:

> (1) unpaid contributions; (2) interest on unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages as specified in the plan; (4) reasonable attorneys' fees and costs; and (5) other appropriate legal or equitable relief.

*Bay Area Painters & Tapers v. Brown,* 2007 WL 1302982, at *4 (N.D. Cal. May 3, 2007). Here, Plaintiffs seek the following damages and fees: $176,419.84 in principal, $8,816.16 in interest, $3,884.00 in attorneys' fees, and $500.00 in costs. Mot. at 3. Plaintiffs have the burden of proving their damages through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

### 1. Amounts Due

Pursuant to the parties' Agreements, Plaintiffs seek an award of unpaid principal in the amount of $176,419.84. Mot. at 3. In support of this amount, Plaintiffs submit the Declaration of Ana Perez Hallmon. Dkt. No. 16-1. Ms. Hallmon's Declaration establishes that Defendant owed Plaintiffs the sum of $224,056.05 at the time the Complaint was filed. Hallmon Decl. at ¶ 5.

9

1  Plaintiffs collected $47,636.21 of the amount due. Hallmon Decl. at ¶ 6. Accordingly, Defendant
2  owes $176,419.84 in principal to Plaintiffs. *Id*. This amount includes liquidated damages and
3  interest through September 28, 2012, as set forth in Exhibit 1 to the Complaint. Compl., Ex. 1. In
4  addition, Plaintiffs seek $8,816.16 in pre-judgment interest from September 28, 2012 to February 28,
5  2013 on all unpaid sums. Mot at 3.

6  Section 1132(g)(2) permits a plan fiduciary to collect interest on all delinquent contribution
7  once they have prevailed on a Section 1145 claim. 29 U.S.C. § 1132(g)(2). The "interest [rate] on
8  unpaid contributions shall be determined by using the rate provided under the plan, or if none, the
9  rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2).

10  As to liquidated damages, the Ninth Circuit has made clear that an award of liquidated
11  damages under § 1132(g)(2) is "mandatory and not discretionary." *Operating Eng'rs Pension Trust*
12  *v. Beck Eng'g & Surveying Co.,* 746 F.2d 557, 569 (9th Cir. 1984). A plaintiff is entitled to a
13  mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be
14  delinquent at the time the action is filed; (2) the district court must enter a judgment against the
15  employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.,*
16  104 F.3d 253, 257 (9th Cir. 1996). Any liquidated damages provided in a trust agreement cannot be
17  in excess of 20% of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

18  In this case, Plaintiffs have satisfied all three requirements for an award under § 1132(g)(2).
19  First, Plaintiffs have alleged that Defendant was delinquent in making its contractually obligated
20  payment contributions. Compl. ¶¶ 13; Hallmon Decl. at ¶¶ 5-6. Exhibit 1 to the Complaint also
21  provides a breakdown of all unpaid contributions for Defendant's employees. Compl. Ex. 1. Second,
22  the undersigned has recommended above that the Court enter default judgment against Defendant.
23  Third, the Agreements authorize the award of liquidated damages following an employer's default.
24  Compl. ¶ 11. Here, the parties' Agreements provide that when contributions are not paid, or not paid
25  timely, and a lawsuit is filed, liquidated damages are assessed at a rate of 20% of the amount due
26  each fund, and interest is assessed at the rate of 12% per annum on the fringe benefit contributions
27  and liquidated damages so assessed. Hallmon Decl. ¶ 4. Liquidated damages and interest assessed
28

10

before the lawsuit was filed are shown in Exhibit 1 to the Complaint. Compl., Ex. 1. Interest at the rate of 12% per annum will continue to accrue from February 28, 2013, until paid. Hallmon Decl. ¶ 7.

### 2. Attorneys' Fees and Costs

Finally, Plaintiffs seek attorneys' fees in the amount of $3,884.00 and costs of $500.00 incurred in this action. Mot. at 3. The parties' Agreements provide that in the event that Plaintiffs consulted an attorney or filed litigation in order to collect unpaid contributions or otherwise enforce their rights against it, Defendant would pay reasonable attorneys' fees and all other reasonable expenses of litigation. Compl. ¶ 14. Based on this contractual authorization, Defendant is liable for the reasonable cost of attorneys' fees and costs incurred by the Trust Funds in seeking to collect the delinquencies at issue. *Kemner v. Dist. Council of Painting & Allied Trades No. 36,* 768 F.2d 1115, 1120 (9th Cir. 1985). Further, plan fiduciaries who obtain a judgment on a Section 1145 claim are also entitled to "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2).

Plaintiffs have submitted evidence indicating they incurred court costs, consisting of a complaint filing fee in the amount of $350, as well as service of the summons and complaint at $150. Hallmon Decl. ¶ 8. As they appear reasonable, the undersigned recommends that the District Court award these costs.

Plaintiffs also seek $3,884.00 in attorneys' fees. Mot. at 3. Under ERISA § 1132(g)(2), fee awards are mandatory; however, courts should consider the reasonableness of these fees. *Kemmis v. McGoldrick,* 706 F.2d 993, 997–98 (9th Cir. 1983) (stating that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions"). The Ninth Circuit has articulated five factors that should be considered in determining whether special circumstances exist warranting the denial of attorneys' fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding

ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980); *Cal. Serv. Emps. Health & Welfare Tr. Fund v. Advance Bldg. Maint.*, 2008 WL 4447723, at *2 (N.D. Cal. Oct. 8, 2008). These factors are intended to guide the court in its discretion, but none of the factors are dispositive; any combination can support an award of fees. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.,* 25 F.3d 743, 749 (9th Cir. 1994); *Legassie Raytheon Co. v. Emp. Benefits Admin Comm.*, 2011 WL 1296395, at *6 (N.D. Cal. Apr. 4, 2011).

Here, Plaintiffs' claims regarding Defendant's failure to make the required payments have been adequately supported and the merits of their position are well-grounded. There is nothing in the record justifying or excusing Defendant's failure to make the payments. Moreover, the award of attorneys' fees would deter other employers from becoming delinquent on employee contributions because fees can add greatly to the amount of unpaid contributions. An award of fees further encourages employers to be more diligent in their record keeping and prompt with their payment. Accordingly, the undersigned finds that the above factors weigh in favor of awarding attorneys' fees to Plaintiffs.

Once fees under ERISA are awarded, the Court must calculate the lodestar amount to assess the reasonableness of attorneys' fees. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. The lodestar amount is determined by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotations omitted). In awarding attorneys' fees, courts must look to the prevailing market rates in the relevant community. *Bell v. Clackamas Cnty.,* 341 F.3d 858, 860 (9th Cir. 2003).

In this case, Plaintiffs' counsel billed a total of 16.4 hours in connection with this suit. Hallmon Decl. ¶ 10, Ex. 1, Dkt. No. 25. In her declaration, Ms. Hallmon states that she was admitted to practice in 2007, and has handled cases involving fringe benefit contributions since 2007. *Id.* at ¶ 11. Lori Nord was admitted to practice in 1979, and has handled cases involving fringe benefit contributions since 1980. *Id.* The customary hourly rate which McCarthy, Johnson & Miller charges for the services of Lori A. Nord is $250 per hour. *Id.* Before January 1, 2013, the customary hourly

12

1  rate which McCarthy, Johnson & Miller charged for the services of Ms. Hallmon was $210 per hour.
2  *Id.* As of January 1, 2013, the customary hourly rate which McCarthy, Johnson & Miller charges for
3  the services of Ms. Hallmon is $240 per hour. *Id.*

        *a.  Reasonableness of Hourly Billing Rate*

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiffs' claimed hourly rates range from $210 to $250 per hour. Hallmon Decl. ¶ 11. Plaintiffs' hourly rates are less than the range found reasonable in ERISA actions by other judges in the Northern District. *See, e.g., Bd. of Trs. Of the Laborers Health and Welfare Trust Fund v. Perez,* 2011 WL 6151506, at *14 (N.D. Cal. Nov.7, 2011) (finding hourly rates of $325 and $345 reasonable in ERISA case). After reviewing Plaintiffs' billing records and considering the experience of counsel, the undersigned finds that the hourly rates are reasonable and consistent with prevailing market rates in the Northern District.

        *b.  Reasonableness of Hours Billed*

In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

In this case, Plaintiffs' counsel billed a total of 16.4 hours. Hallmon Decl. ¶ 10, Ex. 1, Dkt. No. 25. After reviewing the detailed billing records provided in Ms. Hallmon's Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are reasonable. The undersigned thus recommends that Plaintiffs be awarded attorneys' fees in the amount of $3,884.00, which represents the total itemized fee in Ms. Hallmon's

Declaration. Accordingly, the undersigned recommends that the District Court award Plaintiffs $3,884.00 in attorneys' fees and $500.00 in costs, for a total of $4,384.00.

## IV. CONCLUSION

Based on the above analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Default Judgment and enter default judgment against Defendant. Plaintiffs should be awarded:

(1) principal in the amount of $176,419.84;

(2) pre-judgment interest through February 28, 2013 on the unpaid principal in the amount of $8,816.16;

(3) post-judgment interest, on unpaid sums, which shall continue to accrue interest at rate of twelve percent (12%) per annum from February 28, 2013 until paid; and

(4) attorneys' fees and costs in the amount of $4,384.00.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation within fourteen (14) days after being served.

**IT IS SO RECOMMENDED.**

Dated: April 30, 2013

_____
Maria-Elena James
United States Magistrate Judge